IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRYL WAYNE FARRIS,

    Petitioner,                     No. CIV S-04-0989 LKK EFB P

    vs.

STUART RYAN,

    Respondent.                  FINDINGS & RECOMMENDATIONS

_____/

      Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2001 judgment of conviction entered against him in the Sacramento County Superior Court on charges of three counts of sodomy on separate victims, anal penetration, and rape. He seeks relief on the ground that he was denied the right to confront the witnesses against him when, pursuant to California's "Rape Shield Law," the trial court excluded evidence that one of the victims, and possibly all of them, were prostitutes. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

////

**I.     Procedural and Factual Background**[1]

A jury convicted defendant Darryl Wayne Farris of three counts of sodomy (Pen.Code, § 286, subd. (c)(2)[2], one count of anal penetration by force (§ 289, subd. (a)(1)), and one count of rape (§ 261, subd. (a)(2)). The jury found true the special allegation that there was more than one victim within the meaning of section 667.61, subdivision (e)(5).

Defendant . . . argues the trial court erred in refusing to allow him to present evidence: (a) that one of the victims, Alicia L., was a prostitute; and (b) of Alicia L .'s price list for sexual acts. . .

Defendant was accused of, and ultimately convicted of, sexually assaulting three women: Alicia L., Brandi B., and Misty B.

Alicia L. testified about her assault as follows: On October 31, 1998, at about one or two in the morning, Alicia L.'s boyfriend took her to Rancho Cordova to return a car. Alicia L. could not get a ride back home so she started to walk home.

Defendant pulled up to Alicia L. in a van and agreed to give Alicia L. a ride to her home in the downtown area. Alicia L. got into defendant's van. When Alicia L. figured out they were not going the correct direction, she asked defendant where they were going. Defendant told her they were taking the long way.

Next, defendant pulled the van over in an isolated area. Defendant went into the back of the van ostensibly to look for some money. Defendant then pulled Alicia L. into the back of the van. Defendant next forced Alicia L. to orally copulate him. Defendant forced Alicia L. to take off her clothes and then raped and sodomized her.

After he finished assaulting her, defendant told Alicia L. he could not take her downtown and dropped her off at a nearby gas station. Alicia L. went inside and told the person who worked there to call the police.

---

[1] The following summary is drawn from the January 16, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter "Opinion"), at pgs. 1-8, filed in this court as Exhibit B to respondent's answer. This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner has not attempted to overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

[2] All further unspecified statutory references are to the Penal Code unless otherwise indicated.

During her direct examination, Alicia L. admitted she had prior convictions for stealing a car, burglary, and theft. On cross-examination, Alicia L. denied she was acting as a prostitute the night she was assaulted. Alicia L. denied asking defendant to take her to Alhambra and Broadway so she could make money as a prostitute. Further, Alicia L. testified she did not remember if defendant asked her if she was working. Alicia L. denied that she told the defendant she charged more than $20 for sex.

As to the events of Halloween night 1998, defendant claimed that Alicia L. flagged him down. After he agreed to give Alicia L. a ride, the pair engaged in some small talk. Alicia L. told him she was headed to Alhambra and Broadway, an area defendant identified as a stroll area for prostitutes. Defendant asked Alicia L. if she was working, referring to prostitution. Alicia L. told defendant she had worked before, but was not working that night.

Defendant testified he offered Alicia L. $20 to have sex with him plus a ride downtown and she agreed to his offer. Alicia L. purportedly told defendant this was less than her normal rate. Defendant testified thereafter, he and Alicia L. engaged in consensual sex and sodomy. After they were done, defendant decided not to drive Alicia L. downtown. Instead, defendant dropped Alicia L. off at a gas station and drove away. When he cleaned out his car, he found a $20 bill on the car seat that he believed he gave to her.

The second victim, Misty B. testified about her assault as follows: In the early morning hours of November 5, 1998, Misty B. walked to a pay phone near the home she was visiting. Misty B. was going to call her boyfriend or her grandmother to pick her up. As she was in the parking lot of the local Circle K, defendant pulled up in his van and asked Misty B. if she wanted a ride. Defendant agreed to take Misty B. home.[3] As they were driving, Misty B. noticed the defendant started to play with his penis. Misty B. testified defendant also smoked crack while he was driving.

Defendant pulled over to the side of the road in an isolated area. Defendant asked Misty B. if she would give him oral sex for $50. Misty B. rejected the offer. Defendant got into the back of the van. Defendant told Misty B. to come to the back of the van, and when she refused, he pulled her into the back. Defendant forced Misty B. to orally copulate him. He also forced Misty B. to take off her clothes. Defendant put his fingers in Misty B.'s vagina and raped and sodomized her.

////

---

[3] Misty B. originally told the police the defendant told her she had to get into the van because she was embarrassed about getting into a car with a stranger.

3

After he completed this assault, defendant drove Misty B. to a gas station and told her to get out while he was still driving at about five miles per hour. Misty B. jumped out and asked the gas station attendant to call the police. She admitted she was intoxicated at the time of the assault.

On cross-examination, Misty B. admitted to lying to the police about being forced into the car and her misidentification of the van driven by the defendant.

Defendant's version of his encounter with Misty B. was different. Defendant testified he saw Misty B. walking down Folsom Boulevard and invited her to party with him. Misty B. accepted his invitation and got into his van. Defendant offered Misty B. $50 and some rock cocaine to have sex with him and she agreed. They smoked some rock cocaine together. Misty B. directed defendant where to park, claiming that she had taken other customers to this spot. Defendant claimed he paid Misty B. Because she was on her period, Misty B. would not let defendant have vaginal intercourse with her, but agreed to allow defendant to sodomize her. When they were done, defendant dropped Misty B. off at a local Circle K.

The third victim was Brandi B. Brandi B. testified that on December 3, 1998, she left her father's house in Rancho Cordova to go shoot pool. She was walking when the defendant drove up in a green van and offered to give her a ride. Brandi B. accepted the offer. After a while, Brandi B. asked the defendant to drive her home and defendant agreed. Defendant stopped at a gas station and bought cigarettes.

While they were driving, defendant stopped the car in an isolated area and said he needed to look for something in the back of the van. Defendant offered Brandi B. a crack pipe, but she declined his offer. After Brandi B. rejected defendant's invitation to the back of the van, defendant pulled her into the back of the van by the collar of her jacket. Defendant proceeded to force Brandi B. to orally copulate him, raped her, inserted his finger into her anus and then sodomized her. After he sodomized the victim, he raped her again.

When he was done with the victim, defendant dropped Brandi B. off at a café where she proceeded to call the police and gave them the license plate number of defendant's car. When she called the police, Brandi B. asked if she would be arrested.

////

////

////

4

> On cross-examination, Brandi B. denied defendant asked her to go party with him. Brandi B. denied agreeing to have sex with defendant in exchange for money, that defendant paid her for sex, or that defendant agreed to provide her more money than the $20 he had on him if Brandi B. would have sex with him. Brandi B. denied threatening the defendant that she would call the police.
>
> Again, defendant's version of the events was different. Defendant claimed he offered to give Brandi B. a ride to a pool hall. As they spoke in the car, defendant asked if Brandi B. wanted to get "high and kick it." Brandi B. said that was "cool." Defendant told Brandi B. he had $20 and asked if she would "mess around" with him. Brandi B. agreed to orally copulate defendant for that amount of money. During that act, defendant agreed to go to the bank to get her more money in exchange for additional sexual acts and Brandi B. agreed. The two subsequently engaged in consensual acts of sex and sodomy. Defendant, however, refused to go to the bank to get more money. Brandi B. got angry at defendant and threatened to call the police.
>
> * * *
>
> The jury convicted defendant of: (1) one count of sodomy against each victim-counts four, nine, and fourteen (§ 286, subd. (c)(2)); (2) one count of anal penetration by force against Brandi B.-count eight (§ 289, subd. (a)(1)); and (3) one count of rape against Brandi B.-count ten (§ 261, subd. (a)(2)). The jury also found true the allegation under section 667.61, subdivision (e)(5), that defendant committed the above offenses against more than one victim. The jury was unable to reach a verdict on any of the remaining counts and the trial court declared a mistrial as to those counts. The trial court ultimately dismissed them on the People's motion at sentencing. On the People's motion, the court dismissed count five.
>
> The trial court sentenced defendant to state prison for 57 years to life.

## II. Analysis

### A. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**B. Petitioner's Claim**

Petitioner claims that his right to confront the witnesses against him was violated when, pursuant to California's Rape Shield Law, the trial court excluded evidence that "at least one of

6

[the victims] was working as a prostitute the night she claimed to have been assaulted." Pet. at 3; Points and Authorities in Support of Application for Writ of Habeas Corpus ("P&A") at 2. Petitioner argues that this evidence would have bolstered the credibility of his testimony generally, corroborated his testimony that the victims consented to the sexual acts that took place, and would have cast doubt on the testimony of the victims that the sex acts were not consensual. P&A at 25-26. Petitioner argues:

> In the present case, Alicia Lopez was an admitted prostitute, but conveniently denied that she was engaging in prostitution on the night of the offense, despite the suspicious circumstances. Misty Bonanno and Brandi Bidgood similarly denied any prostitution activity, despite the equally suspicious circumstances of their encounters. Everything swung on these denials. If these women were not prostitutes, then petitioner's version was false. On the other hand, if Alicia Lopez charged the same amount for a sex act as in petitioner's quote of her, then he was accurately describing their encounter. If he was truthful about that interchange, then his description of the other encounters – given the fact that they all took place on the "stroll" – undoubtedly would also have been accepted by the jury, and he would not have been convicted.

*Id.* at 37. Petitioner also argues that evidence the victims were prostitutes, and therefore were involved in "conduct evincing moral turpitude," was independently relevant and admissible for impeachment purposes. *Id.* at 36.[4]

////

////

---

[4] Although petitioner focuses his claim mainly on Alicia Lopez, he also appears to be claiming that the trial court violated his constitutional rights by excluding evidence that all three victims were prostitutes. *See* Pet. at 2; P&A at 25-26; P&A at 28. In the traverse, petitioner explains that "the constitutional issue is limited to the Lopez counts; the prejudice extends to the Bonanno and Bidgood counts." Traverse at 2. Respondent argues that any claims involving victims Bonanno and Bidgood are unexhausted, as well as claims that California's rape shield laws are invalid and/or that evidence Lopez was a prostitute should have been admitted to show consent. Answer at 1-2. For the reasons described below, the court reaches the merits of these claims notwithstanding the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable").

1. **State Court Opinion**

The California Court of Appeal rejected petitioner's arguments. It stated its reasoning as follows:

> Admission of Evidence of Prostitution
>
> Defendant argues the trial court erred in refusing to admit evidence that Alicia L. was a prostitute or her price list for her business. We reject this claim.
>
> Background
>
> Throughout the course of the trial, defendant repeatedly attempted to persuade the court to allow him to admit this evidence. While the trial court ruled defendant could properly cross-examine each of the victims on whether they were engaged in prostitution the night of their assault, the court refused to allow defendant to submit independent evidence of their status as prostitutes prior to their rapes and Alicia L.'s price list for sexual acts.
>
> Defendant suggested several theories to admit this evidence. First, he argued that this evidence was relevant to confirm defendant's testimony the $20 he offered Alicia L. was significantly less than her standard charge for oral copulation because "there is no way [defendant] would have known that if she hadn't told him."
>
> Second, defendant sought to admit this evidence as impeachment evidence of moral turpitude under *People v. Wheeler* (1992) 4 Cal.4th 284, 14 Cal.Rptr.2d 418, 841 P.2d 938.
>
> Third, defendant sought to impeach Alicia L.'s testimony she was not engaged in prostitution the night of her assault.
>
> Defendant's fourth theory is significantly more complex. Defendant elicited evidence he had been stopped by a police officer in August 1998 based upon a claim by a prostitute named Diana that defendant had raped another unknown prostitute. Further, defendant presented evidence that prostitutes communicate with police and among themselves concerning dangers on the street. Defendant wanted the jury to draw the conclusion Alicia L. received information about a prostitute rapist through this prostitute grapevine and when defendant ripped her off, she falsely accused him of raping her. Defendant contended this information empowered Alicia L. to report this false crime she might not be able to report otherwise. Also, defendant argued the hearsay nature of the prostitute's information grapevine caused Alicia L. to assert her rapist had hair bumps on his face that defendant lacked.

8

As noted above, this issue was brought up several times during trial. Just prior to the close of defendant's case-in-chief, the court held an omnibus hearing to address each of the defendant's theories of admissibility for this evidence. At the conclusion of this final rehashing of this issue, the court confirmed its prior conclusion, the proffered evidence of Alicia L.'s prostitution and price list was inadmissible.

The court specifically addressed two of defendant's "strongest" contentions, but indicated that its ruling encompassed each of the bases under which this evidence was proffered. The court concluded the probative value that Alicia L. charged more for the services than defendant agreed to pay was slight. Further, the court concluded the prejudicial effect of admitting evidence that Alicia L. was a prostitute substantially outweighed its probative value on this point. As to the prejudicial effect, the court identified the fact that a jury might draw the impermissible inference of her consent from her status as a prostitute.

As to the theory of prostitutes sharing information, the court concluded the probative value of Alicia L.'s status was weak because defendant was not asserting she was mistaken in identifying him, but rather claimed Alicia L. was framing him based on this hearsay evidence from the street. The court specifically noted that there was no evidence tying Alicia L. to the description of defendant supposedly being circulated among prostitutes and that any inference that this had occurred was pure speculation.

Discussion

The statute applicable to admission of a victim's other sexual conduct is Evidence Code section 1103, subdivision (c)(1). Under this subdivision, "evidence of specific instances of the complaining witness' sexual conduct ... is not admissible by the defendant in order to prove consent by the complaining witness." Thus, "[s]ection 1103, subdivision (c), provides that a defendant cannot introduce opinion evidence, reputation evidence, and evidence of specific instances of the alleged victim's previous sexual conduct with persons other than the defendant to prove the victim consented to the sexual acts alleged. In adopting this section the Legislature recognized that evidence of the alleged victim's consensual sexual activities with others has little relevance to whether consent was given in a particular instance." (*People v. Chandler* (1997) 56 Cal.App.4th 703, 707, 65 Cal.Rptr.2d 687, fn. omitted.)

Evidence Code section 1103, however, contains an exception allowing this evidence to be admitted when it is relevant to the credibility of the complaining witness. "Nothing in this subdivision shall be construed to make inadmissible any evidence

9

offered to attack the credibility of the complaining witness as provided in Section 782." (Evid.Code, § 1103, subd. (c)(5).) "Because the victim's credibility is almost always at issue in sexual assault cases, Evidence Code section 782 specifies a procedure requiring an in camera review of the proffered evidence to diminish the potential abuse of section 1103, subdivision (c)(4) [now (c)(5) ]. The defense may offer evidence of the victim's sexual conduct to attack the victim's credibility if the trial judge concludes following the hearing that the prejudicial and other effects enumerated in Evidence Code section 352 are substantially outweighed by the probative value of the impeaching evidence." (*People v. Chandler*, *supra*, 56 Cal.App.4th at pp. 707-708, 65 Cal.Rptr.2d 687, fn. omitted.) "By narrowly exercising the discretion conferred upon the trial court in this screening process, California courts have not allowed the credibility exception in the rape shield statutes to result in an undermining of the legislative intent to limit public exposure of the victim's prior sexual history. [Citations.] Thus, the credibility exception has been utilized sparingly, most often in cases where the victim's prior sexual history is one of prostitution." (*Id.* at p. 708, 65 Cal.Rptr.2d 687.)

Evidence Code section 352 provides the trial court with discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We review the trial court's ruling in denying the admission of this evidence for an abuse of discretion. (*People v. Chandler, supra*, 56 Cal.App.4th at p. 711, 65 Cal.Rptr.2d 687.) We will not disturb a court's exercise of its discretion "except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316, 228 Cal.Rptr. 197, 721 P.2d 79.)

Defendant initially argues that his attempt to admit Alicia L.'s status as a prostitute merely established what her job was not her prior sexual conduct. Thus, he contends the relevant Evidence Code sections should not apply to exclude this evidence at all. He is wrong.

As stated in *People v. Franklin* (1994) 25 Cal.App.4th 328, 334, 30 Cal.Rptr.2d 376, "sexual conduct, as that term is used in sections 782 and 1103, encompasses any behavior that reflects the actor's or speaker's willingness to engage in sexual activity. The term should not be narrowly construed." (Fn. omitted.) The identification of a victim as a prostitute necessarily suggests the victim is willing to engage in sex for a living. Thus, proving a victim is a prostitute necessarily provides evidence of the victim's

10

sexual conduct. That evidence further raises the impermissible inference of the victim's consent. (*See People v. Rioz* (1984) 161 Cal.App.3d 905, 916-917, 207 Cal.Rptr. 903.) Thus, the requirements of Evidence Code sections 1103 and 782 are applicable here and must be followed.

Turning to the application of these provisions to the facts before the court, we find no abuse of discretion.

As described in *People v. Rioz, supra*, 161 Cal.App.3d at pages 916-917, 207 Cal.Rptr. 903, "It is significant that the express provisions of Evidence Code section 782 vest broad discretion in the trial court to weigh the defendant's proffered evidence, prior to its submission to the jury, and to resolve the conflicting interests of the complaining witness and the defendant. Initially, the trial court need not even hold a hearing unless it first determines that the defendant's sworn offer of proof is sufficient. Moreover, even after a hearing outside the presence of the jury at which the complaining witness is questioned about the defendant's offer of proof, the statute specifically reaffirms the trial court's discretion, pursuant to Evidence Code section 352, to exclude relevant evidence which is more prejudicial than probative. An example serves to demonstrate the wisdom of this statutory framework: A defendant charged with forcible rape makes the requisite written motion, supported by a sworn affidavit, offering to prove that the complaining witness, a convicted prostitute, agreed to have sex with the defendant for money and charged him with rape to get even with him when he refused to pay her. However, not only has the complaining witness denied that the sexual activity with the defendant was consensual, but other evidence establishes without contradiction that the complaining witness was beaten in connection with the event. Given the potentially prejudicial impact of a prostitution conviction on the victim's testimony that she did not consent, the trial court, in the exercise of its discretion, may determine that the injuries suffered by the victim are wholly inconsistent with the defendant's offer of proof and either reject the sufficiency of the offer of proof in the first instance or exclude evidence of the prostitution conviction, after a hearing, pursuant to Evidence Code section 352."

The admission of evidence of Alicia L.'s status as a prostitute to impeach Alicia L.'s testimony she was not acting as a prostitute on the night of her assault, while relevant, runs directly into the teeth of the rape shield law. The ultimate question for the trial judge in evaluating this type of evidence is "whether it [is] more prejudicial than probative." (*People v. Casas* (1986) 181 Cal.App.3d 889, 897, 226 Cal.Rptr. 285.) As we have already noted, this evidence "has little relevance to whether consent was given in a particular instance." (*People v. Chandler, supra*, 56 Cal.App.4th at p. 707, 65 Cal.Rptr.2d 687.)

11

The trial court's determination to exclude this evidence was not an abuse of discretion. At the time the court ruled, the court (and the jury) heard ample evidence from which to judge the credibility of the defendant and his victims. The court and the jury had the opportunity to hear and observe the testimony of the defendant and each of his victims. Further, the court and jury heard each of the initial reports of the rape from the victims' mouths through the 911 tape recordings. The court and jury further received evidence from each of the officers who responded as to the emotional state and appearance of the victims. Finally, the medical professionals who examined each of the victims testified as to the results of their examination of each of the victims, including the serious injuries they received as a result of their rapes. Based on this evidence and in light of the policy behind the rape shield law, the trial court reasonably concluded the obvious prejudicial effect of the evidence of Alicia L.'s status as a prostitute substantially outweighed its probative value.

We turn briefly to defendant's three weaker theories of admissibility. The evidentiary value of Alicia L.'s status as a prostitute was also minimally probative on these issues. First, as to the price list claim, defendant admitted he used prostitutes for many years. The fact that defendant testified the price he said Alicia L. agreed to was below her price is equally explained by his experience with prostitutes as it is by her quoting him a price. Thus, the proffered evidence on this point is of dubious evidentiary value at best.

Second, it is true the evidence of prostitution could serve to impeach Alicia L.'s character under *People v. Wheeler, supra*, 4 Cal.4th 284, 14 Cal.Rptr.2d 418, 841 P.2d 938. (*People v. Chandler, supra*, 56 Cal.App.4th pp. 708-709, 65 Cal.Rptr.2d 687.) However, Alicia L.'s character was already successfully impeached by her several prior theft convictions. The additional impeachment value of her misdemeanor prostitution activities was minimal.

The final theory of admissibility was the placement of Alicia L. in the ranks of prostitutes for purposes of proving she obtained information from the prostitute gossip mill that she later used to frame defendant and that this information "empowered" her to falsely claim defendant raped her. This argument contains so many convoluted premises that it strains credibility from the start. Moreover, no evidence demonstrated Alicia L. received this information from this alleged prostitution grapevine. Rather, defendant sought to draw that inference merely from her status as a prostitute. Further, defendant admitted to having sex with Alicia L. and stiffing her on the fee. That she would be empowered or would falsely accuse defendant based upon her receipt of second-or third-hand information that defendant had been stopped earlier in another part of town on the suspicion of raping

prostitutes is incredible. The proffered evidence has minimal probative value.

The prejudicial effect of this evidence, on the other hand, was much more significant. The public policy of California, as reflected in Evidence Code section 1103, subdivision (c), is not to allow a defendant to put the victim on trial by presenting evidence of her other sexual conduct. Excluding evidence of other sexual conduct in cases such as this in which the evidence is only minimally probative with respect to credibility gives effect to the legislative intent to limit public exposure of the victim's other sexual conduct. (*See People v. Chandler, supra*, 56 Cal.App.4th at pp. 707-708, 65 Cal.Rptr.2d 687.) Thus, the prejudicial impact of this evidence was great.

In light of the evidence presented bearing directly on the credibility of Alicia L. and the circumstances of the rape, the trial court did not abuse its discretion in excluding the minimally probative evidence of Alicia L.'s status as a prostitute or her price list.

*People v. Varona* (1983) 143 Cal.App.3d 566, 192 Cal.Rptr. 44 does not help defendant's case. There, the appellate court held the trial court should have allowed the defendant to present evidence the victim was a prostitute who worked in the area she was allegedly walking the night of her attack, and that in her practice of the profession she specialized in the sexual act she was alleged to have been forced to perform. (*Id.* at p. 569-570, 192 Cal.Rptr. 44.)

Here, the evidence was not proffered to disprove these types of specific claims made by Alicia L. Defendant sought to prove she was a prostitute who charged certain fees for certain transactions. Defendant made no claim Alicia L. specialized in sodomy, or any other particular act, as part of her trade. Further, defendant's evidence did not demonstrate Alicia L. walked the streets in this area to ply her trade to negate her claim as to why she was out walking in the early morning hours.

To the extent defendant suggests due process, and denial of fair trial challenges based upon the trial court's refusal to admit this evidence, we reject these claims. (*See People v. Blackburn* (1976) 56 Cal.App.3d 685, 691, 128 Cal.Rptr. 864 [rejecting due process and fair trial constitutional challenges to Evidence Code section 1103].)

////

////

////

Opinion at 14-24.[5]

### 2. Applicable Law

As noted, this court reviews the state court's analysis under a highly deferential standard. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). In a federal habeas proceeding, the court must assess whether the improper exclusion of evidence violated due process by examining "the probative value of the evidence on the central issue; its reliability; whether it is capable of evaluation by the trier of fact; whether it is the sole evidence on the issue or merely cumulative; and whether it constitutes a major part of the attempted defense." *Drayden*, 232 F.3d at 711 (quoting *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.), *amended on denial of reh'g*, 768 F.2d 1090 (9th Cir. 1985)). A defendant's right to present evidence is not absolute; he must comply with established rules of evidence and procedure. *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992). A criminal defendant "does not have an unfettered right to

---

[5] In *Blackburn*, the California Court of Appeal concluded that California's Rape Shield Law (Cal. Evid. Code § 1103) did not violate the petitioner's right to due process or confrontation, explaining that:

> Since the due process right to a fair trial does not require that all relevant evidence that may tend to exonerate a defendant be received and since the evidence barred by subdivision (2) of Evidence Code section 1103 is of limited probative value at best, subdivision (2) does not deprive the defendant charged with the crime of rape of a fair trial. Since subdivision (2) of Evidence Code section 1103 does not bar evidence of sexual conduct of the victim or her cross-examination concerning that conduct to attack her credibility, the right of confrontation encompassed in due process is not impinged.

56 Cal.App.3d at 691.

14

offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egeloff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

On the other hand, criminal defendants have a constitutional right, implicit in the Sixth Amendment, to present a defense; this right is "a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). *See also Crane v. Kentucky*, 476 U.S. 683, 687, 690 (1986); *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972). However, the constitutional right to present a defense is not absolute. *Alcala v. Woodford*, 334 F.3d 862, 877 (9th Cir. 2003). "Even relevant and reliable evidence can be excluded when the state interest is strong." *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983). A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). *See also Crane*, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002).

The right to confront witnesses, guaranteed by the Sixth and Fourteenth Amendments, includes the right to cross-examine adverse witnesses to attack their general credibility or show their possible bias or self-interest in testifying. *Olden v. Kentucky*, 488 U.S. 227, 231 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986); *Davis v. Alaska*, 415 U.S. 308, 316 (1973); *Fowler v. Sacramento County Sheriff's Department*, 421 F.3d 1027, 1035 (9th Cir. 2005). A Confrontation Clause violation occurs where the defendant is prevented from investigating "a prototypical form of bias" if "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had respondent's counsel been permitted to pursue his proposed line of cross-examination"). *Van Arsdall*, 475 U.S. at 680.
////

1  However, "[t]rial judges retain wide latitude insofar as the Confrontation Clause is concerned"
2  and may impose limitations on cross-examination that are "reasonable' and are not "arbitrary or
3  disproportionate to the purposes they are designed to serve." *Id.* at 679; *Michigan v. Lucas*, 500
4  U.S. 145, 151 (1991).

5  A two-part inquiry is appropriately used to determine whether a criminal defendant's
6  Sixth Amendment rights were violated by the exclusion of evidence. *Wood v. Alaska*, 957 F.2d
7  1544, 1549-50 (9th Cir. 1992). First, the court looks at whether the evidence was relevant. *Id.* at
8  1550. If the evidence is relevant, the court looks at whether "legitimate interests outweighed
9  [the defendant's] interest in presenting the evidence." *Id.* A Sixth Amendment violation will
10 only be found if the trial court abused its discretion in making its evidentiary ruling. *Id.* A trial
11 court does not abuse its discretion so long as the jury has "sufficient information" upon which to
12 assess the credibility of witnesses. *Id.*

13 The improper denial of a defendant's opportunity to impeach a witness for bias is subject
14 to a harmless-error analysis. *Van Arsdall*, 475 U.S. at 684; *Bockting v. Bayer*, 399 F.3d 1010,
15 1020 (9th Cir. 2005) ("Confrontation Clause violations are subject to harmless error analysis and
16 thus may be excused depending on the state of the evidence at trial"). Thus, petitioner is not
17 entitled to relief unless he can establish that the trial court's error "had substantial and injurious
18 effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637
19 (1993). *See also Forn v. Hornung*, 343 F.3d 990, 999 (9th Cir. 2003) (finding that a
20 Confrontation Clause error did not have a "substantial and injurious" effect on the verdict and
21 that the error was therefore harmless).

### 3. Discussion

23 As set forth above, after carefully balancing the relevance of the evidence against the
24 considerations set forth in California Evidence Code § 352 and the Rape Shield Law, the state
25 trial and appellate courts concluded that evidence indicating Alicia Lopez was a prostitute should
26 be excluded from petitioner's trial. This did not deprive the petitioner of a fair opportunity to

present his case of consent. The trial court did allow the defense to present other evidence relevant to petitioner's defense of consent. For instance, Alicia Lopez was specifically asked whether she was "acting as a prostitute" on the night of the crimes. Reporter's Transcript on Appeal ("RT") at 456. Brandi Bidgood was asked whether "if [petitioner] had made a deal with you to have sex with you for future payment, and then didn't pay you, renigged [sic] on that, would you call that rape?" *Id.* at 1201. Bidgood was also asked if she was "prostituting that night." *Id.* at 1214. Another witness testified that the area where petitioner encountered the victims was a prostitution stroll area. *Id.* at 1314-15. The defense was allowed to introduce evidence on the general subject of prostitution from a witness who worked as a prostitute in the area where these incidents took place. *Id.* at 1674-89. A private investigator and retired police officer who had worked as an "undercover john" testified as an expert witness on behalf of the defense that prostitutes and police officers "shared information." *Id.* at 1714-17. Defense counsel argued to the jury that the victims were acting as prostitutes when they had sex with petitioner, and he referred back to the foregoing testimony to support these arguments. *Id.* at 2305. During his closing argument, the prosecutor basically argued that it didn't matter whether the victims were prostitutes or not. *Id.* at 2376-77. During an evidentiary conference with the trial judge, petitioner's trial counsel conceded that "the jury is going to know these women are prostitutes just based on what they did that night." *Id.* at 174.

Under these circumstances, petitioner was not deprived of his right to present a defense or to confront the witnesses against him. The trial court's preclusion of evidence under the Rape Shield Law was certainly not arbitrary or disproportionate, and the court's careful balancing of the parties' interests passes constitutional muster. *See Anderson v. Morrow*, 371 F.3d 1027, 1030 (9th Cir. 2004) (no due process or confrontation clause violation where trial court admitted some evidence of the victim's prior sexual experience but, pursuant to Oregon's rape shield law, excluded other evidence after balancing relevance against the victim's privacy); *Pack v. Page*, 147 F.3d 586, 588 (7th Cir. 1998) (exclusion of evidence not unreasonable application of federal

17

law where the court "did not suppose that a rape-shield statute always prevails over a defendant's interest in undermining the testimony of his accuser," but "applied a balancing approach under which the trial judge had discretion to weigh the competing interests"); *Sandoval v. Acevedo*, 996 F.2d 145, 148 (7th Cir. 1993) ("the principle of the rape shield law . . . has been held to be constitutional," although "the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis"). *Cf. LaJoie v. Thompson*, 217 F.3d 663, 671-73 (9th Cir. 2000) (exclusion of evidence pursuant to a state rape shield law was arbitrary and disproportionate to the purposes served by the statute where evidence excluded simply because of petitioner's violation of the notice requirements for rape shield law).

In a similar situation involving the exclusion of evidence pursuant to California's Rape Shield Law, the Ninth Circuit explained that the balancing approach used by the state courts in this case passes the AEDPA test:

> Although the trial court did not expressly rely upon "the governing legal principles" [concerning the Sixth Amendment], *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir.2004), its reasoning was nonetheless consistent with that principle. It took into consideration various legitimate state interests such as waste of time, confusion and prejudice, and, in weighing those interests against the probative value of the proffered cross-examination, it implicitly determined that the exclusion of that evidence was not unreasonable, arbitrary or disproportionate. *See Lucas*, 500 U.S. at 151, 111 S.Ct. 1743; *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. 1431. Nor are there any Supreme Court cases that are materially indistinguishable from the situation here in which the Supreme Court held contrary to the trial court. Thus, the trial court's ruling was not "contrary to" clearly established federal law as determined by the Supreme Court. *See Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

*Fowler*, 421 F.3d at 1033. The Seventh Circuit has reached a similar conclusion:

> Indeed, the Supreme Court has yet to hold that any application of a rape-shield statute is inconsistent with the Constitution, making it particularly hard to say that failure to make a constitutional exception to a rape-shield law-which is what Pack needs in order to prevail-is "contrary to ... clearly established Federal law, as

18

> determined by the Supreme Court of the United States". . . All [seventh circuit precedent] shows is that courts must give earnest consideration to the possibility that excluding evidence under a rape-shield law may interfere unduly with the defendant's opportunity to present a defense of innocence. The Illinois appellate court thought about that question and concluded that Pack had, and used, several means independent of the statement to undercut [the victim's] credibility. Whether or not we would have reached the same conclusion had we been hearing the case on direct appeal is beside the point. Section 2254(d)(1) limits collateral attack to errors so grave that the state's handling of the litigation must be called "unreasonable." That appellation cannot be applied to the decision in Pack's case.

*Pack*, 147 F.3d at 589.[6] For the reasons described above, the decision of the state courts rejecting petitioner's confrontation clause claim is not an unreasonable application of United States Supreme Court authority.

Even assuming the trial court erred in precluding evidence that Alicia Lopez was a prostitute, any error was harmless under the circumstances of this case. As described by the state appellate court, the victims' testimony was similar in many respects and was corroborated to a large extent by the medical evidence of their injuries and the testimony of the responding police officers. Opinion at 21. In addition, the jury heard substantial evidence about prostitution which led even petitioner's counsel to concede the jurors would recognize, or at least suspect, that the victims were prostitutes. In light of this, evidence that Alicia Lopez was a prostitute would not have had a "substantial and injurious" effect on the verdict in this case. *Brecht*, 507 U.S. at 637.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

---

[6] Petitioner acknowledges that the claim raised in the instant petition "has not come before the high court." P&A at 33.

19

1  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
2  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*
3  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
4  DATED:   February 2, 2009.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE